**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Janelle Silbernagel,            )<br>                                        )<br>        Plaintiff,                  )<br>                                        )<br>    vs.                                )<br>                                        )<br>Standing Rock/Fort Yates Community  )<br>School, Fort Yates Public School     )<br>District #4,  Standing Rock Sioux Tribe,  )<br>                                        )<br>                                        )<br>        Defendants.              ) | **ORDER RE PENDING DISCOVERY<br>MOTIONS, DISCOVERY, AND<br>AND SCHEDULING**<br><br><br>Case No. 1:08-cv-012 |

## I.     BACKGROUND

Plaintiff filed her amended complaint on January 28, 2008, against three named defendants: the Standing Rock/Fort Yates Community School ("Community School"); the Fort Yates Public School District #4 ("Public School District #4"); and the Standing Rock Sioux Tribe ("Tribe").  In her amended complaint, plaintiff alleges she was sexually harassed while she was employed as a teacher by the Community School.   She alleges that the Tribe and Public School District #4 joined to form or operate the Community School.

In lieu of answering, the Tribe and the Community School filed motions for summary judgment for dismissal on February 20, 2008, which motions are still pending. (Docket Nos. 5 & 7)  The thrust of these motions is that the complaint must be dismissed for lack of subject matter jurisdiction over the defendants and sovereign immunity.  Public School District #4 filed its answer on March 6, 2008, asserting a number of defenses, including the defense that it did not employ the plaintiff and is not otherwise liable for any sexual harassment that may have occurred.

On April 8, 2008, plaintiff filed a motion to allow "early discovery." The Community School in response filed a motion for protective order protecting it from any discovery.

On June 17, 2008, the court held a hearing to discuss the pending discovery motions and to otherwise address the subject of scheduling and discovery. At the hearing, the attorney who appeared on behalf of the Tribe, who also said he had the authority to speak for the Community School, argued that the court was obligated to immediately address the summary judgment motions for dismissal without allowing any opportunity for discovery, despite the fact that both the Tribe and the Community School supported their motions for summary judgment with a number of documents and affidavits.

## II.     DISCUSSION

Two things appear not to be seriously disputed. The first is that the plaintiff had a teaching contract with the Community School as the named contracting party during the period of time the acts of sexual harassment allegedly occurred. The second is that the Tribe and Public School District #4 entered into a Joint Powers Agreement ("JPA") that affects the operation of the Community School, which is attended by both tribal students and students who are under the jurisdiction of the Public School District #4.

The Tribe and the Community School raise serious issues as to whether they can be liable under Title VII and with respect to sovereign immunity. Title VII explicitly exempts Indian tribes from the definition of "employer" under 42 U.S.C. § 2000e(b), and an Indian tribe is subject to suit only where Congress has authorized suit or the tribe has clearly waived its immunity, e.g., C & L Enterprises, Inc. v. Citizen Band of Potawatomi Indian Tribe of Oklahoma, 532 U.S. 411, 416-418 (2001). Further, the immunity of the tribe extends to its agencies. E.g., Hagen v.

Sisseton-Wahpeton Community College, 205 F.3d 1040, 1044 (8th Cir. 2000) (immunity extends to tribal college); Dillon v. Yankton Sioux Tribe Housing Auth., 144 F.3d 581, 583 (8th Cir. 1998) (immunity extends to a tribal housing authority).  Because of this, the court believes that these issues should be addressed as soon as possible and that the Tribe and the Community School should not be required to engage in full-blown discovery in the interim.

On the other hand, the Tribe's involvement with Public School District #4 has muddied the water.  Among other things, it *may* raise questions regarding the status of the Community School in light of the execution of the JPA, particularly in terms of whether it is now an exclusively tribal entity as the Tribe claims, or whether it has become some sort of hybrid entity that may be subject to Title VII because it is no longer strictly a tribal enterprise.[1]

---

[1] The issue of tribal sovereignty was raised in connection with an investigation of plaintiff's complaint by the North Dakota Department of Labor.  While ultimately the Department of Labor decided not to require a response to the complaint from the Community School because of tribal sovereignty concerns, the Assistant Attorney General responding on behalf of the Department observed the following in terms of her assessment of the status of the Community School in light of the Joint Powers Agreement and the Department of Labor's investigation of the underlying facts:

> The Joint Powers Agreement ("JPA") entered into by the Standing Rock Sioux Tribe and Fort Yates Public School District No. 4 created a school and a governing structure for the school that is neither solely "tribal" nor solely "non-tribal."  The joint governance of the school system is acknowledged by Superintendent Harold Larson, in his affidavit in which he states he is the superintendent for both "the Standing Rock Community School and the Fort Yates Public School District 4."  Section IV(A) states that the school's "governing body" is not only the Standing Rock Community School Board but also the Fort Yates School Board.  Section IV(B) states that the Fort Yates School Board "shall continue to manage its affairs as a public corporation of the State of North Dakota."  Section X states that the Agreement does not "diminish . . . rights or protections afforded other persons . . . under . . . state or federal law."  Through the express terms of the JPA, the Tribe has agreed that in the matter at hand the rights of the complaining party (that being Silbernagel) under laws administered by the North Dakota Department of Labor are undiminished.  See also Moses v. Burleigh County, 438 N.W.2d 186, 189-190 (N.D. 1989) (the state has "important public interests in eradicating discrimination" and providing remedies for violations of the right "to be free of discrimination.").

(Doc. No. 6-5) The court also notes that JPA provides that any property acquired by the parties to the JPA will be held jointly by the Tribe and Public School District #4.  (Doc. No. 6-2).

There are cases that extend Title VII's exemption for Indian tribes to tribal enterprises.  E.g., Giedosh v. Little Wound School Bd, Inc., 995 F.Supp. 1052 (D.S.D. 1997).  None of the cases cited by the parties address a situation where the Tribe has voluntarily entered into a relationship with an entity that is subject to Title VII such that it may be possible to argue the "employer" was no longer strictly a tribal enterprise.

There also may be a question regarding whether the Community School is an entity that is capable of being sued or whether the proper party defendant(s) in terms of its operation has to be either (1) the Tribe, if it solely owns and

3

The issue now is whether the plaintiff should be permitted some limited discovery regarding the jurisdictional issues and claims of immunity raised by the Tribe and the Community School. The Tribe and the Community School take the position that any discovery infringes upon their sovereign immunity. While this may be so, the court believes there must be some balancing of the competing interests, particularly here since Congress has expressed a strong interest in affording victims of sexual harassment an opportunity for recourse as evidenced by its passage of Title VII.

In this case, while the Tribe and the Community School may ultimately prevail on their jurisdictional and immunity arguments, the court is satisfied that the ultimate determination of these issues requires some looking at the facts and that the plaintiff should have the opportunity of making sure that all necessary facts will be considered. For this reason, the court concludes that the plaintiff should be allowed some discovery reasonably tailored to the resolution of the jurisdictional and immunity issues presented by the motions for summary judgment. Cf. Cheney v. U.S. Dist. Court for Distr. of Columbia, 542 U.S. 367, 405 (2004) (Ginsburg and Souter, JJ, dissenting) (noting that court's remand for discovery-tailoring measures rejects the government's no-discovery position based on the claim of immunity); Crawford-El v. Britton, 523 U.S. 574, 593 n.14 (1998) (recognizing that some limited discovery may be appropriate prior to resolving a claim of qualified immunity upon summary judgment); Hinojosa v. Johnson, 2008 WL 1924216, at *6, n.12 (5th Cir. 2008) (trial court erred in not allowing some limited discovery in issues relevant to the claim of

---

controls the operation of the Community School, (2) the Tribe and Public School District #4 if it is subject to the JPA, or, (3) a JPA entity whose members consist of the Tribe and Public School District #4. Under North Dakota law, it appears that an appropriately tailored JPA may be capable of creating a separate legal entity, although it is not clear that the JPA does so in this case. See N.D.C.C. § 54-40.3-01(3). As already noted, however, the Community School held itself out to be a separate entity in that the plaintiff's teaching contract was with it and no one else. Further, the Community School in this case, at least in terms of making an appearance and filing pleadings, has treated itself as a separate entity and is represented by a separate attorney.

qualified immunity); Connecticut Bank of Commerce v. Republic of Congo, 309 F.3d 240, 260 n.10 (5th Cir. 2002) (permitting discovery limited to claim of foreign sovereign immunity); Reiss v. Societe Centrale Du Groupe Des Assurances Nationales, 235 F.3d 738, 747 (2nd Cir. 2000) (remanding case for further factual development when required to resolve fact issue relevant to a claim of subject matter jurisdiction). The fact that the discovery may impose some burdens on the Community School is, in part, a function of the fact that the Tribe entered into the JPA, which now creates questions. Further, even if the Tribe and the Community School were not parties and the only named defendant was Public School District #4, tribal school officials would likely be subject to some of the same discovery.[2]

Finally, it appears a substantial amount of information is already known in terms of the relationships among the parties. And, after inquiring of plaintiff's counsel, it does not appear that a substantial amount of additional discovery will be required.

---

[2] In response to a question from the court regarding whether the Tribe would resist, for example, a deposition notice to the Superintendent if the only named defendant was Public School District #4, the attorney for the tribe took the position that it would resist any discovery as infringing upon its sovereign powers notwithstanding its involvement with Public School District #4 by way of the JPA. This position is of dubious validity. United States v. Juvenile Male 1, 431 F.Supp. 2d 1012, 1016-17 (D. Ariz. 2006); cf. Allen v. Woodford, 543 F. Supp. 2d 1138, 1144-45 (E.D. Cal. 2008). As the court stated in Juvenile Male 1:

> The service of a federal subpoena on an employee of an entity of a tribe is neither a suit, nor one against a tribe. For example, the United States enjoys sovereign immunity from suit without its consent. And the states of the Union enjoy immunity from suit without their consent. But it can hardly be contended that federal or state sovereign immunity from suit has any application to the enforcement of a federal subpoena on the custodian of records of a state or federal agency. Federal subpoenas routinely issue to state and federal employees to produce official records or appear and testify in court and are fully enforceable despite any claim of immunity. See, e.g., Exxon Shipping Co. v. United States Dep't of Interior, 34 F.3d 774, 778 (9th Cir.1994). Even the President of the United States must comply with a federal subpoena. United States v. Nixon, 418 U.S. 683, 713, 94 S.Ct. 3090, 3110, 41 L.Ed.2d 1039 (1974). It would be strange indeed if a federal subpoena were operative against the greater sovereign and its officers but not the lesser. See Cherokee Nation v. Southern Kan. Ry. Co., 135 U.S. 641, 656, 10 S.Ct. 965, 971, 34 L.Ed. 295 (1890).

431 F.Supp. 2d at 1016-1017 (emphasis added).

**III.   ORDER**

Based on the foregoing, the court hereby **GRANTS IN PART** and **DENIES IN PART** the motion by the Community School for a protective order (Doc. No. 16) and **DENIES AS MOOT** the plaintiff's motion for early discovery (Doc. No. 15).   The court **ORDERS** the following:

1. The Community School and Public School District #4 shall within fifteen days of this order to provide copies of any insurance contracts, insurance policies, or other insurance documents that provide indemnity for any Title VII relief that the plaintiff may be entitled to receive should she prevail.

2. The plaintiff shall have until July 8, 2008, to propound discovery reasonably tailored to the issues of the claims of immunity and lack of jurisdiction by the Tribe and the Community School, which shall be directed to the Community School and Public School District #4, unless a showing for discovery from the Tribe is required.   All other discovery as to the Tribe and the Community School is **STAYED** pending resolution of the motions for summary judgment on the issues of jurisdiction and immunity.

3. The defendants shall have until August 12, 2008, to respond to the discovery requests directed to the issues of jurisdiction and immunity.

4. The plaintiff shall have until August 29, 2008, to file any supplemental response to the pending motions for summary judgment.

5. The defendants shall have until September 30, 2008, to file a reply to any supplemental response filed by the plaintiff.

6. The plaintiff and Public School District #4 may engage in broader written discovery (*i.e.*, interrogatories and requests for production of documents) directed to any issues of liability and damages.[3]

7. The court will conduct a further scheduling conference and set additional case deadlines after resolution of the pending motions for summary judgment. Further, the court will adjust the foregoing schedule as necessary to address any disputes that may arise with respect to the scope of the discovery that has been permitted or in the event the parties need additional time to comply.

Dated this 18th day of June, 2008.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge

---

[3] The court did not address this at the hearing but, in drafting the order, determined that the reasons for limiting the scope of discovery with respect to the Tribe and the Community School are not present with respect to written discovery directed to the Public School District #4. However, if the parties wish to wait, the court will allow additional time for discovery after resolution of the pending motions for summary judgment for written discovery and any depositions that may need to be taken.